IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA

| | | |
|---|---|---|
| ARMANDO GARCIA PICAZO, | ) | Case No. 5:25-cv-4057 |
| Petitioner, | ) ) ) | |
| vs. | ) ) | |
| CHAD SHEEHAN, Woodbury County Sheriff; PETER BERG, Director, United States Immigration and Customs Enforcement St. Paul Field Office; TODD M. LYONS, Acting Director, United States Immigration and Customs Enforcement; KRISTI NOEM, Secretary, United States Department of Homeland Security; SIRCE OWEN, Executive Office of Immigration Review; PAMELA BONDI, Attorney General of the United States; DONALD J. TRUMP, President of the United States, in their official capacities, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | **MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION** |
| Respondents. | ) | |

## INTRODUCTION

1. On August 8, 2025, Armando Garcia Picazo was arrested by Immigration and Customs Enforcement (ICE) following an arrest in Sioux City, Iowa. ICE ERO, DEA, and HSI Special Agents were conducting surveillance on an approved Field Operation Warrant for an individual whose initials are O.C. According to the Government, Mr. Garcia looked like O.C., so he was detained, and later arrested after ICE determined that he had no immigration status in the United States. Mr. Garcia has lived in Iowa for around 9 years, has no criminal history, and poses no danger to the public.

2. Mr. Garcia requested a bond redetermination hearing in front of an IJ in Omaha, NE. Ex. _____, Notice of Bond Redetermination.

3. Having no record of criminal history and strong community ties, an immigration judge (IJ) ordered Mr. Garcia's release on a $6,000 bond. Ex. 2, Order of the Immigration Judge (September 12, 2025). The IJ determined that Mr. Garcia poses no flight risk nor danger to the community. Mr. Garcia's family then attempted to post the bond; however, ICE will not allow them to post it. Ex. ____, Cell Phone Screenshot. The family remains ready and able to pay the $6,000 bond ordered by the IJ.

4. Now, ICE refuses to release Mr. Garcia from custody, relying on a federal regulation giving DHS unilateral authority to block an IJ's custody order. Under the "automatic stay" regulation, 8 C.F.R, § 1003.19(i)(2), if DHS disagrees with an IJ's custody determination, DHS can file a notice of intent to appeal that automatically stays the IJ's order. In other words, the prosecutors who failed to meet their burden to keep Mr. Garcia can block the IJ's order and force continued detention.

5. Mr. Garcia now languishes in custody for the duration of the bond appeal, or even longer, despite qualifying for a bond redetermination hearing in immigration court. As applied, the government's use of the automatic stay regulation deprives Mr. Garcia of due process and *ultra vires*.

6. Mr. Garcia seeks habeas relief under 28 U.S.C. § 2241, which is the proper vehicle for challenging his unlawful detention. *See I.N.S. v. St. Cyr*, 533 U.S.

289, 301, 121 S. Ct. 2271, 2280 (2001) ("At its historical core, the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest.").

7. Mr. Garcia is seeking a preliminary injunction and temporary restraining order during the pendency of this action for the following reasons contained in the enclosed brief.

## ARGUMENT

A temporary restraining order is governed by a four-factor test. Courts must consider whether a petitioner has shown: (1) a likelihood of success on the merits, (2) that he is likely to suffer irreparable harm in the absence of such relief, (3) that the balance of equities tips in his favor, and (4) that an injunction is in the public interest. *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 20 (2008).

Here, Petitioner is likely to succeed on the merits of his petition for a writ of habeas corpus. Petitioner brings claims against both the federal immigration authorities and the State of Iowa for violations of his due process rights, on which he is likely to succeed. Furthermore, the likelihood of further irreparable harm is undeniable, no government entity has any cognizable interest in violating the Constitution of the United States, and an injunction is in the public interest because it will discourage future unlawful government behavior.

    I.    Petitioner is likely to succeed on the merits regarding his immigration detention.

Petitioner is likely to succeed in his claims against the federal government because ICE's unilateral stay violates his due process rights under the 5th amendment of the United States Constitution.

A. The Automatic Stay Provision violates Mr. Garcia's rights to Substantive and Procedural Due Process.

The Due Process Clause of the Fifth Amendment forbids the government from depriving any "person" of liberty "without due process of law." U.S. Const. amend. V. All people within the territorial bounds of the United States enjoy due process rights, regardless of citizenship. See e.g., *Mathews v. Diaz*, 426 U.S. 67, 77 (1976) ("[T]here are literally millions of [non-citizens] within the jurisdiction of the United States…[and] the Fifth Amendment…protects every one of these persons.") (internal quotation marks omitted); *Yick Wo v. Hopkins*, 118 U.S. 356, 368-69 (1886). These protections apply equally to non-citizens facing deportation proceedings. *Demore v. Kim*, 538 U.S. 510, 523 (2003); *see also Zadvydas*, 533 U.S. at 721 ("[B]oth removable and inadmissible [non-citizens] are entitled to be free from detention that is arbitrary and capricious.") (Kennedy, J., dissenting).

"Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty" that the Due Process clause protects. Zadvydas, 533 U.S. at 690. Due process thus requires "adequate procedural protections" to ensure that the government's asserted justification for incarceration "outweighs the individual's constitutionally protected interest in avoiding physical restraint." Id. at 690.

Immigration custody is not intended to be punitive; as such, the government has but two cognizable interests in pursuing discretionary detention under 8 USC 1226: mitigating 1) risk of flight and 2) danger to the community. *See Zadvydas*, 533 U.S. at 690; *Demore*, 538 U.S. at 528. An impartial adjudicator determined that Mr. Garcia provided sufficient evidence to show he is neither a flight risk nor a danger to the community.

B. The government's use of the automatic stay provision is *ultra vires*.

The automatic stay regulation exceeds the authority given to the Attorney General by Congress. Congress gave the Attorney General discretion to decide whether to release detained noncitizens pending removal proceedings if they have not been convicted of certain criminal offenses and are not linked to terrorist activities. See 8 U.S.C. § 1226(a), (c). The Attorney General has delegated this authority to IJs, who have discretion to determine whether to release these noncitizens on bond. 8 C.F.R. §§ 1003.19, 1236.1.

Congress has not delegated this authority to DHS. There is no statutory authority for DHS to unilaterally stay an IJ's bond determination. DHS's use of the automatic stay is an unlawful use of the discretionary power granted to the Attorney General and "has the effect of mandatory detention of a new class of aliens, although Congress has specified that such individuals are not subject to mandatory detention." Zavala, 310 F. Supp. 2d at 1079; see also Ashley, 288 F. Supp. 2d at 673 ("As Congress exempted aliens like Petitioner from the mandatory detention of § 1226(c), it is

unlikely that it would have condoned this back-end approach to detaining aliens like Petitioner through the combined use of § 1226(a) and § 3.19(i)(2).").

## BALANCE OF EQUITIES

The balance of equities and the public interest clearly support granting a preliminary injunction and temporary restraining order in this case. As outlined above, the Petitioner faces concrete and severe hardship, he is imprisoned with criminals and will remain so indefinitely. Furthermore, if Petitioner's continued detention is indeed unconstitutional under the Due Process Clause, the government cannot claim any legitimate harm from an injunction requiring compliance with constitutional standards. See, e.g., *Zepeda v. INS*, 753 F.2d 719, 729 (9th Cir. 1983) (recognizing that the government "cannot reasonably assert that it is harmed in any legally cognizable sense by being enjoined from constitutional violations"). Lastly, a less-restrictive means exists through which DHS can obtain a stay: the discretionary stay regulation requiring DHS to seek an emergency stay from the BIA. 8 C.F.R. § 1003.19(i)(1). That regulation protects DHS's interest in obtaining a stay without unduly infringing on Mr. Garcia's liberty. See e.g., *Dep't of State v. Munoz*, 602 U.S. 899, 910 (2024) ("When a fundamental right is at stake, the government can act only by narrowly tailored means that serve a compelling state interest.").

## PUBLIC INTEREST

ICE and EOIR's conduct in this case has been plainly unlawful and shows no regard for statutes, regulations or decades of established practice. It also disregards

the due process rights owed to thousands of immigration respondents across the country. An injunction is in the public interest because it will prevent these agencies from repeating such unlawful actions in the future.

## PRAYER FOR RELIEF

Petitioner Armando Garcia Picazo respectfully requests that this Court assume jurisdiction over this matter and order the following pending adjudication of his Petition:

1. Order ICE to accept Mr. Garcia's bond, as ordered by the Immigration Judge.
2. Upon payment of said bond, order that ICE immediately release Mr. Garcia pending these proceedings pursuant to the Court's inherent power pending adjudication of Petitioner's Petition for Writ of Habeas Corpus.
3. In the alternative, if immediate release is not granted, Petitioner asks that the Court order Respondents not to transfer him out of this District during the pendency of the case to preserve jurisdiction.
4. Lastly, Petitioner requests that a hearing be set on the present motion as soon as possible.

Dated this 19th day of September 2025.

/s/ Guy K. Weinstein
Guy K. Weinstein
Roth Weinstein, LLC
713 S. 16th St.
Omaha, NE 68102
Office: (402) 346-0720
Fax: (402) 615-6223
Guy@RothWeinstein.com

Certificate of Service

The undersigned hereby certifies that on September 19th, 2025 he filed this document using the Court's electronic ECF system and also mailed a physical copy to:

U.S. Attorney's Office
600 4th St., #670
Sioux City, IA 51101

/s/ Guy K. Weinstein
Guy K. Weinstein